UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **TOWN OF VINTON** | **CASE NO. 2:23-CV-00240** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CERTAIN UNDERWRITERS AT LLOYDS LONDON ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is "Defendant's Motion to Compel Arbitration and Stay the Proceedings" (Doc. 6) filed by Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, and Old Republic Union Insurance Company (collectively referred to as "Defendants" or "Insurers"). Also, before the Court is a "Motion for Oral Arguments" (Doc. 11) filed by counsel for the Town of Vinton ("Vinton").

## INTRODUCTION

This lawsuit involves damage caused by Hurricanes Laura and Delta that made landfall near Lake Charles, Louisiana on August 27, 2020, and October 9, 2020, respectively. During the relevant time period, Defendants/Insurers insured Vinton's many properties with a commercial insurance policy that included a syndicate of insurers identified above. Vinton is a political subdivision of the State of Louisiana.

Vinton alleges that the Insurer failed to properly and timely adjust its claims and asserts claims for breach of contract, bad faith penalties, and attorney fees pursuant to Louisiana Revised Statutes 22:1973 and 22:1892.

The lawsuit was originally filed in state court and removed to this Court. Prior to removal, Vinton dismissed with prejudice the only two foreign insurers, Certain Underwriters at Lloyd's, London and HDI Global Specialty SE.[1]

## LAW AND ANALYSIS

Louisiana law prohibits arbitration agreements in insurance policies covering property within the state. La. R.S. § 22:868(A)(2). Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. Accordingly, McCarran-Ferguson allows state laws like Louisiana Revised Statute section 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006). However, this "reverse preemption" applies only to "Acts of Congress" and not to treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 723 (5th Cir. 2009). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") is one such treaty and requires signatory nations to "'recognize an agreement in writing under which the parties undertake to submit to arbitration' their dispute 'concerning a subject matter capable of settlement by arbitration.'" *Id.* at 719 (quoting Convention on the Recognition and

---

[1] Plaintiff's exhibit 1.

Page **2** of **18**

Enforcement of Foreign Arbitral Awards art. II(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3)). State insurance law thus has no impact on arbitration agreements arising under the Convention. *Id.* at 723–24; *see also McDonnel Group, LLC v. Great Lakes Ins. Branch SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019).

Insurers remark that the subject policy includes an arbitration provision that provides that "[a]ll matters in difference" between the Insured and the Insurers "in relation to this insurance" are to be submitted to arbitration (the "Arbitration Agreement"). Defendants invoked the Arbitration Agreement and demanded that Vinton arbitrate all matters. Counsel for Vinton rejected Defendants' arbitration demand.

Insurers maintain pursuant to 9 U.S.C. § 202, that the Arbitration Agreement falls under the Convention and the Federal Arbitration Act (the "FAA"). The Insurers seek an order from the Court referring the entirety of Vinton's claims against Defendants to arbitration and to stay all litigation pending the conclusion of the arbitration.

Insurers argue that the Arbitration Agreement falls under the Convention because it arises out of a commercial relationship, it is not entirely between citizens of the United States, involves performance abroad, and has a reasonable relationship with foreign states. Insurers also argue the Arbitration Agreement is exempt from Louisiana's anti-arbitration law under Paragraph D of Louisiana Revised Statute 22:868. Alternatively, Defendants maintain that the Arbitration Agreement is enforceable under the FAA because the Policy is a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract. Specifically, Insurers argue that by filing suit,

Vinton violated the Arbitration Agreement. Insurers also argue that equitable estoppel applies to require arbitration if the contract and statutory law does not require it.

Vinton contends that because there are no foreign insurers involved, the contracts of insurance are "entirely between citizens of the United States," and thus statutorily excluded from falling under the Convention. 9 U.S.C. § 202. Vinton also contends that even if the foreign insurers were involved, the contracts of insurance do not contain an agreement to arbitrate. Vinton asserts that the foreign insurers' Amendatory Endorsements expressly change the policy (nullifying the arbitration provision) and require them to submit to the court in which the insured chooses to file suit for payment of "any amount claimed to be due" under the policy. As to preemption by the FAA, Vinton argues that the McCarran-Ferguson Act shields Louisiana's anti-arbitration law from preemption. Vinton argues that because arbitration provisions "operate to deprive Louisiana courts of jurisdiction of the action against the insurer," Paragraph D of Louisiana Revised Statute 22:868 clarifies that "a forum or venue selection clause" is allowed in surplus policies, and as a political subdivision of the state, Vinton is protected from the policy's arbitration provision by Louisiana Revised Statute 9:2778. Finally, Vinton argues that equitable estoppel does not apply to a public body.

Insurers argue that the Arbitration Clause must be enforced under the Convention, *i.e.*, the Convention even applies to domestic insurers, because the insurance relationship involves property located abroad and envisages performance abroad; the Arbitration Clause must be enforced under the FAA; and Louisiana Revised Statutes section 22:868

provides no basis for reverse-preemption under McCarran-Ferguson because it does not apply to surplus lines policies.

Vinton counters that the Convention does not apply because the defendants are wholly domestic insurers; that Louisiana Revised Statute section 22:868(A) is an anti-arbitration provision applicable to surplus lines policies; and, in the alternative, that the foreign insurers' Amendatory Endorsements expressly change the Policy related to arbitration.

*Facts*

The Policy in effect during the relevant time period states that each insurer in the syndicate has its own separate contract with Vinton, each with a separate policy number.[2] Each insurer is separately responsible and never jointly responsible with any other insurer in the syndicate.[3] The Policy further states that each insurer's several liability for loss amounts to the insured shall not exceed its allocated participation percentage.[4] The Contract Allocation Endorsement provides the following:

> The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below.
>
> The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall

---

[2] Doc. 6-3, pp. 2-5 (Contract Allocation Endorsement and Declaration Page).
[3] *Id.*, pp. 47-48 (Section VII-Conditions, ¶ W).
[4] *Id.* pp. 2-4 (Contract Allocation Endorsement).

be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).[5]

The Policy also includes endorsements that state: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."[6]  For example, the Underwriters Service of Suit Endorsement states that: In the even of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the requist of the "Insured," will submit to the jurisdiction of a court of competent jurisdiction within the United States."[7] There are similar endorsements for other insurers.[8]

*Whether the Convention applies*

Insurers argue that the Arbitration Agreement is enforceable under the Convention, despite no foreign insurers are defending the lawsuit.  In other words, the Convention applies to domestic insurers.

Insurers rely on the 1983 Supreme Court case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* for the proposition that the United States, as evidenced by the FAA, has a strong, liberal policy favoring arbitration agreements. In 2022, the Supreme Court clipped the wings of the oft quoted "strong federal policy favoring arbitration"

---

[5] *Id.* p. 2.
[6] *Id.* pp. 62, 63, 73, 80,
[7] *Id*. p. 80.
[8] *Id.* pp. 81, 82, 83.

created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–13 (2022) ("Nine circuits, including the Eighth, have invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two circuits have rejected that rule. We do too."). Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA.

In the Fifth Circuit, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (collecting cases) (internal quotations omitted).

Here, the Policy's Contract Allocation Endorsement states that "[t]his contract shall be construed as a separate contract between the Insured and each of the Underwriters."[9]

Insurers rely heavily on *Port Cargo.* where the policy at issue also contained a contract allocation endorsement from which the district court determined that the insureds could not be compelled by the Convention to arbitrate their claims against the domestic insurers because they failed *Freudensprung*'s fourth prong. 2018 WL 4042874, at *6 (E.D.

---

[9] Doc. 6-3, p. 2.

La. Aug. 24, 2018) ("Although the insurance contracts between plaintiffs and the domestic insurers fit the first three criteria for compelling arbitration under the Convention, the parties to those contracts are all American citizens. Therefore, plaintiffs cannot be compelled by the Convention to arbitrate their claims against the domestic insurers.").[10] Similarly, the policies in the instant matter are contracts between Vinton and eight domestic insurers. Unlike the defendants in *Port Cargo*, however, which also included contracts with two foreign insurers, the foreign insurers in this matter have been dismissed with prejudice. Because each of the insurers here has a separate contract with the insured and no party to the agreement is not an American citizen, under *Freudensprung*, Vinton cannot be compelled by the eight domestic insurer Defendants to arbitrate under the Convention. Additionally, *Port Cargo* came to this conclusion notwithstanding two foreign insurer defendants.

*Equitable estoppel*

Defendants raise the theory of equitable estoppel and argue that it "applies with equal force here." *Port Cargo*, 2018 WL 4042874, at *6–7. This reasoning relies on the Fifth Circuit's holding in *Grigson v. Creative Artists Agency L.L.C*, which adopted the Eleventh Circuit's intertwined-claims test allowing a nonsignatory to compel arbitration under equitable estoppel in situations. 210 F.3d 524, 527 (5th Cir. 2000). The first situation when equitable estoppel applies is

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory

---

[10] The *Port Cargo* court ultimately ordered arbitration based on equitable estoppel principles.

> makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* Here, much like the matter in *Port Cargo*, Vinton's claims against the domestic insurers do not rely on its contracts with the foreign insurers because the Contract Allocation Endorsement specifically states that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters."[11] Therefore, the Arbitration Clause that could invoke the Convention with a foreign insurer is separate and distinct from the Arbitration Clause with domestic insurers that cannot. The first *Grigson* situation does not apply. *See Port Cargo*, WL 4042874, at *7 ("[P]laintiffs do not directly rely on the terms of the written agreements containing the arbitration clause that arises under the Convention in asserting their claims against the nonsignatories to those contracts, *i.e.*, the domestic insurers.").

> As to the second *Grigson* situation,
>
> equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson*, 210 F.3d at 527. In *Grigson*, a non-insurance, non-Convention case, the Fifth Circuit determined that the plaintiffs' claims in two actions "are intertwined with, and dependent upon, the distribution agreement, including, but not limited to, Defendants (non-signatories) and TriStar (non-defendant signatory) being charged with interdependent and

---

[11] Doc. 7-3, p. 4.

Page **9** of **18**

concerted misconduct." *Id.* at 531. The Court pointed out that although the signatory[12] was no longer a defendant, having been dismissed without prejudice from an earlier action, the current action and the earlier action "are the same. In essence, [the signatory] is a defendant." *Id.* at 530. Here, however, the two foreign signatory defendants were dismissed with prejudice. Doc. 10-1, p. 3.

Likewise, in *Port Cargo*, under the second *Grigson* situation, the court compelled arbitration holding that "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Port Cargo*, 2018 WL 4042874, at *7. There the plaintiffs "allege[d] that the[] insurers all breached the terms of the policy together through the shared adjustor" and those insurer defendants included both nonsignatory domestic insurers and signatory foreign insurers. 2018 WL 4042874, at *7.

Vinton remarks that estoppel does not apply against government entities absent heightened evidence. *Show Boat Star Partnership v. Slaughter,* 789 So.2d 554, 562 (al. 4/3/01). Government estoppel would require four prongs of proof: "unequivocal advice from an unusually authoritative source" that the insurers reasonably relied on, causing "extreme harm" and "gross injustice." Vinton argues that none of this is present or alleged by the Insurers. The Court agrees that here equitable estoppel is not warranted.

---

[12] Here signatory refers to an arbitration clause in the contract between the plaintiff and TriStar. By contrast, in the instant matter and in *Port Cargo*, signatory refers to an agreement to arbitrate under the Convention.

Accordingly, the Convention does not apply, and arbitration can only be compelled through the FAA.

*Reverse-preemption under Louisiana Revised Statute 22:868*

Louisiana Revised Statutes section 22:868 states:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:

(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.

(2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Insurers argue that regardless of whether the Convention applies, the FAA preempts Louisiana's anti-arbitration law. Insurers argue that the test under the

McCarran-Ferguson Act is whether the FAA would impair a New York law instead of a Louisiana law. The Court disagrees with Insurers' application of New York law here.

Insurers argue that the arbitration provision in a surplus policy is exempt from Louisiana's anti-arbitration law under Paragraph D of Louisiana Revised Statute 22:868. Vinton argues, and the Court agrees, that an arbitration provision is not a forum or venue selection clause as used in Paragraph D.

On June 12, 2020,[13] the Louisiana legislature amended Section 22:868 to include Subsection D, which states: "The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." Additionally, the Louisiana legislature added "venue" to the title of the revised statute as well as "or venue" to subsection (A)(2), which now states: "Depriving the courts of this state of the jurisdiction *or venue* of action against the insurer." Prior to the 2020 amendment, Louisiana courts held Section 22:868(A)(2) to reverse-preempt the FAA under McCarran-Ferguson; that is, it was treated as an anti-arbitration provision. *E.g.*, *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable under R.S. 22:629.") (La. R.S. § 22:629 was retitled La. R.S. § 22:868.).[14]

---

[13] 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West).
[14] *See also Macaluso v. Watson*, 171 So.2d 755 (La. App. 4 Cir. 1965) (holding an arbitration agreement between and insurer and insured was void and unenforceable because it has the effect of depriving a court of jurisdiction to decide the issue of liability as well as quantum."); *Courville v. Allied Professionals Ins. Co.*, 218 So.3d 144, 148 (La. Ct. App. 1st Cir. 2017), *writ denied*, 228 So.3d 1223 (La. 2017) ("In Louisiana, compulsory arbitration provisions in

The question now is whether the text of Section 22:868(D), which addresses forum or venue selection clauses, extends to cover arbitration clauses. This question has not been ruled on by the Louisiana Supreme Court, therefore United States District Courts "must make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would decide." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir.1999)). The "fundamental question in all cases of statutory interpretation is legislative intent and that the rules of statutory construction are designed to ascertain and enforce that intent." *Carollo v. Dep't of Transportation & Dev.*, 346 So. 3d 751, 759 (La. 2022) (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So. 2d 16, 26–27 (La. 2008)).

> The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in the search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

*Id.* at 759–760 (cleaned up).

Before diving into the text Section 22:868, its necessary to put some context around the amendment. On May 8, 2019, the Louisiana Supreme Court decided *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.* where the issue before the court was "whether La.

---

insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."); *Hobbs v. IGF Ins. Co.*, 834 So.2d 1069, 1071 (La. Ct. App. 3d Cir. 2002) ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer.").

R.S. 22:868(A)(2) prohibits the enforcement of the forum selection clause in dispute." 282 So. 3d 1042, 1044 (La. 2019). The pre-amendment text of Section 22:868(A)(2) stated: "Depriving the courts of this state of the jurisdiction of action against the insurer." 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West). The court observed that the Louisiana Code of Civil Procedure article 1 "defines 'jurisdiction' as 'the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.'" *Creekstone Juban*, 282 So. 3d at 1047. Furthermore, the court explained that jurisdiction and venue are distinct legal concepts: "If jurisdictional requirements are met, courts throughout the state have the legal power and authority to hear the case; however, *not all courts with jurisdiction are in the proper venue.*" *Id.* (emphasis in original) (quoting *Turner v. Leslie*, 684 So. 2d 395, 396 (La. 1996)). The Louisiana Supreme Court concluded that "where the parties have contracted for a particular forum or venue for litigating disputes, this does not mean they have deprived the courts of this state of the legal authority to hear the dispute (*i.e.*, the jurisdiction)." *Id.* Accordingly the Louisiana Supreme Court "decline[d] to extend the definition of "jurisdiction"—which is clearly defined in the Civil Code—to include "venue" or "forum." *Id.*

*Creekstone Juban*'s majority opinion prescinds arbitration clauses from its jurisdictional discussion. Justice Weimer's concurrence, however, does not and is instructive. *See Id.* at 1051. He agreed that forum selection clauses did not deprive courts of jurisdiction but that arbitration clauses did. *Id.* at 1052. Furthermore, Justice Weimer observed that "[i]n 1948, shortly after passage of [McCarron-Ferguson], the Louisiana

Legislature took up Congress's invitation to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code" and that Louisiana "cases decided after the enactment of [the predecessor to La. R.S. § 22:868] have confirmed its purpose as an anti-arbitration statute." *Id.*

Under "the terse and admirable maxim of the civil law, '[c]ontemporanea expositio est fortissima in lege,'" *e.g.*, *State ex rel. Cunningham v. Bd. of Assessors of Par. of Orleans*, 52 La. Ann. 223, 238, 26 So. 872, 879 (1898), a statute must be considered in the light of all circumstances existing at the time of its enactment. In February 2020, just shy of ten months after *Creekstone Juban*, Louisiana Bill Digest indicated a proposed change to Section 22:868, *i.e.*,

> <u>Present law</u> provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of jurisdiction of action against the insurer.
>
> <u>Proposed law</u> provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of **venue or** jurisdiction of action against the insurer.

Louisiana Bill Digest, Original, 2020 Reg. Sess. S.B. 156 (emphasis added). Thus, a proposed inclusion of "venue" into Section 22:868 arose shortly after the Louisiana Supreme Court in *Creekstone Juban* reversed the trial court's denial of exception of improper venue, holding that pre-amendment Section 22:868 did not prohibit enforcement of a forum selection clause. 282 So. 3d at 1044, 1050. The effect of Section 22:868 pre-amendment and post-*Creekstone Juban* was to preclude enforcement of arbitration clauses but not preclude forum and venue selection clauses because the former are jurisdictional whereas the latter are not. *See Creekstone Juban*, 282 So. 3d at 1047 ("[Section 22:868's]

plain language addresses jurisdiction only and forum selection clauses do not deprive the Louisiana court of jurisdiction over the action.").

When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision must be applied as written, with no further interpretation made in search of the legislature's intent." *Auricchio v. Harriston*, 332 So. 3d 660, 662–63 (La. 2021); La. Civ. Code art. 9; R.S. § 1:4 (2023). The added Section 22:868(D) provides: "The provisions of Subsection A of this Section shall not prohibit *a forum or venue selection claus*e in a policy form that is not subject to approval by the Department of Insurance." The subject of Subsection D's clause, "[t]he provisions of Subsection A," includes (A)(2)'s anti-arbitration provision. Subsection D's clause's active verb is "shall not prohibit." The objects of Subsection D's clause, "a forum or venue selection clause" thus carve out only a part of the Subsection A's prohibitory effect. Consequently, based on the clear nature of the text, the Court's interpretation of Subsection D is that its prohibitive effect on Subsection A is limited to only forum and venue selection clauses in surplus lines policies. What remains of Subsection A's effect post-amendment is the full extent of the law pre-*Creekstone Juban* minus forum and venue selection clauses found in surplus lines policies. Based on the text of Section 22:868, the Court cannot, as the Defendants argue with scant support, arrive at an interpretation that conflates arbitration clauses with forum and venue clauses; the former is jurisdictional whereas the latter are not. Thus, to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators. As such, the Court finds that Louisiana's anti-arbitration law is applicable here.

Vinton also contends that choice of law in this case points to Louisiana. Louisiana law requires all insurers doing business in Louisiana to comply with the Insurance Code. Louisiana Revised Statute 22:12. Louisiana Revised Statute 22:868(A)(1) prohibits "any condition, stipulation, or "agreement" in an insurance contract "requiring it to be construed according to the laws of any other state. Louisiana Revised Statute 9:2778 prohibits "any provision in a contract" "involving ... a political subdivision of the state" that "requires interpretation of the agreement according to the laws of another jurisdiction." The Arbitration Agreement provides that "[t]he seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance," and further states that "[t]he Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature." Thus, the Policy's language allows Insurers to circumvent by contract, Louisiana's laws that regulate how insurance companies handle first-party claim in direct contravention of this State's law that are meant to protect insureds. Louisiana Revised Statute 9:2778 prohibits any provision involving a political subdivision such as Vinton that requires the application of another state's laws.

## CONCLUSION

The Court finds that the Arbitration Agreements are reverse-preempted by Louisiana Revised Statute 22:868(A)(2), and Louisiana law prohibits the choice of law provisions. Louisiana Revised Statute 22:868(A)(1) and Louisiana Revised Statute 9:2778. As such,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration and Stay the Proceedings (Doc. 6) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument (Doc. 11) is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 14th day of December, 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE